UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ETHEL GOINS,

        Plaintiff,          Case Number: 03-CV-74758-DT

v.          JUDGE PAUL D. BORMAN
        UNITED STATES DISTRICT COURT

CITY OF DETROIT, a municipal corporation,
and DETROIT POLICE OFFICER MATTHEW
ZANI #3308, and DETROIT POLICE
OFFICER THOMAS TURKALY,

        Defendants.
_____ /

**OPINION AND ORDER DENYING DEFENDANT ZANI'S
MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendant Matthew Zani's motion for summary judgment on all of Plaintiff's claims against him. The Court heard oral argument on August 17, 2005. Having considered the entire record, and for the reasons that follow, the Court DENIES the instant motion in its entirety.

**I. BACKGROUND**

On November 25, 2003, Ethel Goins ("Plaintiff") filed suit against the City of Detroit[1] ("City") and Matthew Zani ("Zani"), a Detroit Police Officer (collectively "Defendants").[2] All of Plaintiff's claims turn upon her allegations that Zani unlawfully inflicted excessive force upon

---

[1] On August 17, 2005, Plaintiff dismissed the City of Detroit as a Defendant in this case.

[2] Plaintiff's Complaint also names Detroit Police Officer Thomas Turkaly ("Turkaly") as a Defendant. However, according to the City, Plaintiff has not served Turkaly, and he has not appeared in the action. (City Br. at 2.)

her, unlawfully entered her motel room, and unlawfully seized her.  (Compl. at ¶¶ 12-17.)

Count I alleges that Defendants intentionally inflicted emotional distress upon Plaintiff in violation of Michigan law.  (Compl. at ¶¶ 20-30.)  Count II alleges that Defendants committed gross negligence in violation of Michigan law.  (*Id.* at ¶¶ 31-35.)  Count III alleges that Zani unlawfully inflicted excessive force upon Plaintiff, entered her residence, and seized her in violation of the Fourth Amendment, as incorporated by the Fourteenth Amendment and as actionable via 42 U.S.C. § 1983.  (*Id.* at ¶¶ 36-39.)  Count III also alleges that Zani's actions deprived Plaintiff of "life, liberty, or property, without due process of law" in violation of the Fifth and Fourteenth Amendments.  (*Id.*)  Count IV alleges that the City is liable for Zani's violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights.  (*Id.* at ¶¶ 40-50.)

On August 31, 2004, the Court issued an order granting the City judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), as to Plaintiff's § 1983 claims based upon the Fifth Amendment and her state-law tort claims.  The Court reasoned that the City was entitled to governmental immunity, M.C.L.A. 691.1407(1), on Plaintiff's state-law tort claims, and that the Fifth Amendment only applies to the federal government.  (8/31/04 Order at 3-4.)

On May 9, 2005, Defendant City filed a motion for summary judgment on Plaintiff's remaining § 1983 claims against it.  On May 10, 2005, Defendant Zani filed a motion for summary judgment on all of Plaintiff's claims against him.  At oral argument on August 17, 2005, the parties stipulated to the dismissal with prejudice of Plaintiff's remaining claims against Defendant City, and the Court issued an order memorializing that stipulation.  Thus, before the Court are only Plaintiff's claims against Defendant Zani, and Zani's instant motion for summary

judgment on those claims.

As a threshold matter, although Count III asserts a Fifth Amendment claim against Zani, such a claim cannot stand. *See Scott v. Clay County, Tenn.,* 205 F.3d 867, 873 n.8 (6th Cir. 2000) (recognizing that the Fifth Amendment applies only to the federal government). Moreover, to the extent that Count III alleges that Zani violated Plaintiff's 14th Amendment rights to substantive due process based upon the alleged excessive force, unlawful entry, and unlawful seizure, such a claim cannot lie. *See Walker v. Norris,* 917 F.2d 1449 (6th Cir. 1990) (recognizing that the Fourteenth Amendment "has a substantive component that 'protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of an arbitrary and capricious government,'" but holding that "'[i]n the face of a constitutional commandment' expressly proscribing unreasonable seizures, we should not ask instead whether 'the challenged seizure could be found to have run afoul of' the [F]ourteenth [A]mendment's seemingly less applicable due process clause'"). Rather, Plaintiff's claims based upon the alleged excessive force, unlawful entry, and unlawful seizure may rest only upon the Fourth Amendment, as incorporated by the Fourteenth Amendment.

## II. FACTS

On November 28, 2000, at approximately nine or ten o'clock p.m., Plaintiff was in her room at the Renaissance Motel in Detroit, Michigan, where she was residing, when she heard a knock at her door. (Resp. at 2; Pl. Dep. at 22-23.) The parties dispute what followed.

According to Plaintiff, after she asked who was at the door, she heard a voice say "manager," but did not recognize the voice as belonging to the manager, who had a foreign accent. (Pl. Dep. at 23-24.) Leaving the door's chain in place, Plaintiff cracked open the steel

3

door and peeked out to see who was there, but saw no one.  (*Id.* at 24.)  As Plaintiff was closing the door, it was kicked open and struck the right side of Plaintiff's face.  (*Id.*)  Plaintiff contends that the impact of the steel door on her face, which sounded like a gun shot, twisted her neck and knocked her backwards "quite a ways."  (*Id.* at 24-25, 59.)  The door's chain was broken and lying on the floor.  (*Id.* at 24-25.)

As the door was eased open, Zani, followed by Officer Turkaly, rushed in the room with their guns pointed at Plaintiff's head, asking Plaintiff whether there was a "short white guy" or anyone else in the room with her.  (*Id.* at 25-26, 28; Zani 4/15/04 Tr. at 25; Diaz 4/30/04 Tr. at 13.)  Zani advised Plaintiff that the officers "had a suspicion of drug activities" occurring in her room.  (Pl. Dep. at 62.)  Putting her hands in the air and moving backwards, Plaintiff informed them that she was alone.  (*Id.* at 26.)  Confirming this, the officers put their guns down.  (*Id.*)

Zani asked Plaintiff why she was holding her face, and Plaintiff informed him that the door had struck her.  (Pl. Dep. at 26.)  Zani replied, "I thought that was a man standing there." (*Id.* at 64.)  Zani permitted Plaintiff to put a cold towel on her face.  (*Id.* at 26.)

After being asked by Zani, Plaintiff advised him that a "short white guy" had never been in her room.  (Pl. Dep. at 26.)  Upon learning this, Zani stated to the other officer, "Now I'm really pissed, go down and ask that crack head why he sent us up to this apartment."  (*Id.*)  Zani apologized for breaking into Plaintiff's residence.  (*Id.* at 63.)  Zani twice asked Plaintiff whether she needed medical treatment, and Plaintiff declined such treatment.  (*Id.* at 26-27.)  Zani wrote his name, badge number, and a telephone number on a piece of paper and gave it to Plaintiff should she "need anything."  (*Id.* at 27.)  Upon exiting the room, Zani picked the door's chain off of the floor, informed Plaintiff that he would have management fix it, and closed the door behind

him. (*Id.*) Only Zani–not Turkaly–spoke with Plaintiff during the encounter. (*Id.* at 28-29.)

Plaintiff testified that, after being struck by the door, her head, neck, and back ached, and she did not sleep for three days. (Pl. Dep. at 31-32.) Plaintiff sought medical treatment for her injuries within a week of the incident. (*Id.* at 32.)

According to Zani, on the day in question, he and other officers went to the Renaissance Motel, which is known for prostitution, drugs, and robberies, to investigate suspected drug-trafficking from several apartments. (Zani, 4/14/04 Tr. at 109.) Relying upon information from a crack addict in another room, Zani went to Plaintiff's room–room 43–to investigate whether drugs were being sold from there. (Zani 4/14/04 Tr. at 112-13; 4/15/04 Tr. at 22-23; Diaz 4/30/04 Tr. at 11-13.) Zani did not conduct any surveillance on or obtain a search warrant for Plaintiff's room. (Zani 4/15/04 Tr. at 23-24; Diaz 4/30/04 Tr. at 88.) Upon arriving at Plaintiff's room, Zani knocked on the door and announced himself as a police officer, not a manager. (Zani 4/14/04 Tr. at 112-13; 4/15/04 Tr. at 25.) Zani heard yelling and cursing coming from behind the door. (Zani 4/14/04 Tr. at 113.)

According to Zani, Plaintiff "ripped open the door and was like what the hell are you doing here, why are you bothering me, I'm trying to sleep." (Zani 4/14/05 Tr. at 113.) Zani did not know whether Plaintiff broke the chain on the door. (Zani 4/15/05 Tr. at 24.) After telling Plaintiff to "take it easy," Zani again advised Plaintiff that he was a police officer, and asked Plaintiff whether there was a "short [w]hite male" in her room. (Zani 4/14/04 Tr. at 113.) Plaintiff replied, "[N]o, why the hell are you here? If you are talking about the drugs, they are all down in Apartment 49." (*Id.* at 114.)

After informing Plaintiff that he had already investigated room 49, Zani told Plaintiff that

he was "terribly sorry for disturbing" her. (*Id.*) According to Zani, Plaintiff was still "really, really mad" such that Zani, in an attempt to placate her, gave her his name, badge number, and phone number to his command. (*Id.*) Zani told Plaintiff that, because she was "so upset" and "so mad," she could call one of his supervisors and make a complaint if she felt "that something ha[d] been done wrong here" or if he had disturbed her sleep. (*Id.*) Zani admitted that, in doing so, he was making it easier for Plaintiff to file a complaint against him with Internal Affairs. (Zani 4/15/04 Tr. at 27.) Thereafter, Zani left Plaintiff's residence. (Zani 4/14/04 Tr. at 114.)

Zani testified that, if his entry into a residence had injured an occupant, he would have been required to call an ambulance, notify a supervisor, and record the injury in his activity log. (Zani 4/14/04 Tr. at 116.) However, according to Zani, he did not kick open the door of Plaintiff's residence. (*Id.* at 114-15.) Zani conceded that he would have lacked the requisite legal basis to do so. (*Id.* at 115; Diaz 4/30/04 Tr. at 89.) Zani's activity log simply noted that he had advised Plaintiff of the purpose of the investigation of her room. (Zani 4/14/04 Tr. at 116.) According to Zani, he neither entered Plaintiff's residence nor drew his gun on her. (*Id.* at 117.) Officer Mark Diaz testified that, on the night in question, Zani told him that Plaintiff was "pissed" because Zani woke her up. (Diaz 4/30/04 Tr. at 14.)

### III. ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A "genuine" issue exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In deciding a motion for summary judgment, the Court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

## A. § 1983 Claims

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A "search" occurs upon the infringement of an individual's reasonable expectation of privacy. *United States v. Avery*, 137 F.3d 343 (6th Cir. 1997). A "seizure" occurs when, based upon all of the surrounding circumstances, a reasonable person would not feel free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554 (1980).

Three types of encounters between citizens and police officers exist: 1) the consensual encounter, which is not a seizure and requires no "objective level of suspicion"; 2) the investigative detention, a seizure which requires a "reasonable, articulable suspicion of criminal activity"; and 3) the arrest, a seizure which requires probable cause. *Avery,* 137 F.3d at 352.

The Fourth Amendment prohibits police officers from entering a home–whether to conduct a search or a seizure–absent a warrant based upon probable cause; probable cause and exigent circumstances; or voluntary consent. *Payton v. New York,* 445 U.S. 573, 583, 603 (1980); *Welsh v. Wisconsin,* 466 U.S. 740, 749 (1984). Moreover, this Fourth Amendment

protection of the home–known as the *Payton* rule–equally applies to motel rooms. *Welsh,* 466 U.S. at 749.

The Fourth Amendment and its "reasonableness" standard govern "all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure" of a free citizen." *Graham v. Connor,* 490 U.S. 386, 395 (1989) (emphasis omitted). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396. The reasonableness calculus must make "allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Moreover, the reasonableness inquiry is "an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

To state a claim under 42 U.S.C. § 1983 against a defendant in his individual capacity,[3] the plaintiff must show that the defendant deprived him of a federal right while acting under

---

[3]The Complaint does not specify through which capacity of Zani it seeks the requested relief. The Eleventh Amendment bars any claims against state officials in their official capacity for damages, rather than for injunctive or declaratory relief. *Dugan v. Brooks,* 818 F.2d 513, 515 n.2 (6th Cir. 1987).

color of state law. *Sperle v. Mich. Dep't of Corrections,* 297 F.3d 483, 490 (6th Cir. 2002).

The doctrine of qualified immunity affords "not a defense to liability," but, rather, "an immunity from suit altogether . . . to avoid [the] burdens of [the] costs of trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Under the qualified-immunity doctrine, government officials performing discretionary functions are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In determining whether a government official is entitled to qualified immunity, a court must first determine whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show that the public official's conduct violated a constitutional right, and, if so, whether that right was so clearly established that a reasonable official would understand that his particular conduct would violate that right. *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001).

As to the latter inquiry, a government official is entitled to qualified immunity where he "acted under the objectively reasonable belief that his or her actions were lawful." *Ahlers v. Schebil,* 188 F.3d 365, 373 (6th Cir. 1999) (citing *Harlow*, 457 U.S. at 815-19.) In *Brosseau v. Haugen,* 125 S.Ct. 596, 599 (2004), the Supreme Court elaborated that "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [that] she confronted." The United States Court of Appeals for the Sixth Circuit recently explained *Brosseau* as follows:

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, . . . reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation. *Brosseau* leaves open two paths for showing that officers were on notice that they were violating a clearly

> established constitutional right–where the violation was sufficiently obvious under the general standards of constitutional care that the plaintiff need not show a body of materially similar case law, and where the violation is shown by the failure to adhere to a particularized body of precedent that squarely govern[s] the case here.

*Lyons v. City of Xenia,* – F.3d –, No. 99-00603, 2005 WL 1846994, at *11 (6th Cir. Aug. 4, 2005) (internal quotation marks and citations omitted).

As outlined above, Plaintiff's Fourth Amendment claims turn upon her allegations that Zani forcefully entered her residence and seized her without the requisite legal basis, inflicting excessive force upon her in the process. Put another way, Plaintiff maintains that Zani unlawfully kicked the door of her residence into her face and entered her residence with his gun pointed at her based solely upon unsubstantiated information from a crack addict that Plaintiff's residence was involved in drug-trafficking. (Resp. at 9; Pl. Dep. at 24-26, 28, 63-64.) Defendants do not dispute that Zani lacked the requisite legal basis to enter Plaintiff's residence, forcefully or otherwise, or to draw his gun upon Plaintiff. Rather, Zani denies, in the first instance, that he kicked open the door of Plaintiff's residence, that he entered Plaintiff's residence, and that he drew his gun on Plaintiff. (Zani 4/14/04 Tr. at 114-17; Diaz 4/30/04 Tr. at 89.)

Indeed, such conduct would not only violate the Fourth Amendment, but that violation would be "sufficiently obvious under the general standards of constitutional care." *See Brosseau,* 125 S.Ct. at 599. As detailed above, the record evidence, when viewed in the light most favorable to Plaintiff, demonstrates that Zani violated Plaintiff's Fourth Amendment rights by kicking open the door of Plaintiff's residence into her face, entering that residence, and drawing his gun upon her without the requisite legal basis. Moreover, because genuine issues of

material fact exist as to whether Zani, in fact, engaged in conduct that would have violated Plaintiff's clearly-established Fourth Amendment rights, Zani is not entitled to qualified immunity at this stage of the proceedings. (Zani 4/14/04 Tr. at 114-17; Diaz 4/30/04 Tr. at 89.) *See Black v. Parke*, 4 F.3d 442, 445 (6th Cir. 1993) ("[I]f genuine issues of material fact exist as to whether the defendants actually did commit acts that would violate a clearly established right, then summary judgment on qualified immunity is improper."). Zani is not entitled to summary judgment on Plaintiff's § 1983 claims against him.[4]

### B. State-Law Tort Claims

As noted above, Counts I and II, respectively, allege that Zani intentionally inflicted emotional distress ("IIED") upon Plaintiff and committed gross negligence in violation of Michigan law. (Compl. at ¶¶ 20-35.) Zani contends that these state-law tort claims fail as a matter of law. (Br. at 6.) Plaintiff contends otherwise.

#### 1. Governmental Immunity

As a threshold matter, Zani maintains that he is entitled to governmental immunity on

---

[4]Zani contends that Plaintiff has failed to demonstrate that Zani was deliberately indifferent–involving a culpable "state of mind more blameworthy than negligence"–to Plaintiff's Fourth Amendment rights, and that, absent such a showing, Zani cannot be held liable under § 1983. (Br. at 9.) *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (defining deliberate indifference in the context of an Eighth Amendment prison-condition claim); *Williams v. Mehra*, 186 F.2d 682 (6th Cir. 2001)(same).

However, the deliberate-indifference standard upon which Zani relies is inapplicable to Plaintiff's Fourth Amendment claims against him. *See Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990) (recognizing the deliberate-indifference standard for municipal liability under § 1983 based upon a failure-to-train theory regardless of the degree of culpability necessary to establish the underlying constitutional violation, and noting that an objective-reasonableness test typically governs Fourth Amendment claims while a deliberate-indifference standard usually governs Eighth Amendment claims). In any event, even if such a standard were to apply, Plaintiff has created a genuine issue of material fact as to whether Zani was deliberately indifferent to violating Plaintiff's Fourth Amendment rights.

these claims. Michigan's Governmental Immunity statute, M.C.L.A. 691.1407(2), provides:

> . . . [E]ach officer . . . of a governmental agency . . . shall be immune from tort liability for injuries to person . . . caused by the officer . . . if all of the following are met:
>
> A)   the officer . . . is acting or reasonably believes [that] he is acting within the scope of his or her authority;
>
> B)   the governmental agency is engaged in the exercise or discharge of a governmental function;
>
> C)   the officer's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. . . . '[G]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

As to the last prerequisite, Zani argues that Plaintiff has failed, as a matter of law, to demonstrate that Zani was "the proximate cause" of Plaintiff's injuries. *See Robinson v. City of Detroit,* 462 Mich. 439 (2000) (defining "the proximate cause," for purposes of employee governmental immunity, to signify "the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause'"). Specifically, Zani contends that there is no record evidence identifying him as the officer who kicked open Plaintiff's door. (Br. at 2.) Plaintiff testified that, because the door was obstructing her view, she could not see which officer kicked the door open, and they never informed her of which officer did it. (Pl. Dep. at 61, 63.)

Yet, an absence of evidence showing that Zani kicked open Plaintiff's door would, at most, entitle Zani to governmental immunity on Plaintiff's state-law tort claims to the extent that they turn upon the door having struck Plaintiff's face. Put another way, Zani's argument does nothing to demonstrate his entitlement to governmental immunity on Plaintiff's tort claims stemming from Zani's alleged unlawful entry into Plaintiff's residence and his alleged unlawful

12

seizure of Plaintiff by drawing his gun on her.

In any event, a genuine issue of material fact exists as to whether Zani kicked open the door of Plaintiff's residence. As Plaintiff underscores, she testified that: 1) Zani was the first of two officers to enter her residence  (Pl. Dep. at 28.);  2) Zani apologized to Plaintiff for breaking into her residence (*Id.* at 63);  3) Zani gave Plaintiff his name, badge number, and a contact telephone number (*Id.* at 27.);  4) Zani assured Plaintiff that management would fix the broken chain (*Id.* at 27.);  and 5) only Zani–not Turkaly–spoke with Plaintiff during the encounter (*Id.* at 28-29.)  (Resp. at 4-5.)  Indeed, Zani admitted that, in giving Plaintiff the written information, he was making it easier for Plaintiff to file a complaint against him with Internal Affairs.  (Zani 4/15/04 Tr. at 27.)  Most importantly, Plaintiff testified that, when she informed Zani that the door had struck her, Zani replied, "I thought that was a man standing there."  (Pl. Dep. at 26, 64.)  This testimony, when reasonably viewed in Plaintiff's favor, suggests that Zani kicked the door open despite knowing that it would strike Plaintiff's face, but did so only because he thought that Plaintiff was a man.  (Resp. at 7.)

Alternatively, Zani maintains that Plaintiff, as a matter of law, has failed to demonstrate that Zani engaged in gross negligence.  (Br. at 7.)  In support, Zani underscores that Plaintiff testified that Zani apologized for breaking into her room, and asked Plaintiff if she needed medical treatment after learning that the door had struck her.  (Br. at 3-4; Pl. Dep. at 26-27, 63.)  Zani further underscores that Plaintiff testified that she had "no idea" as to whether Zani knew that the door was likely to hit Plaintiff or that Zani acted recklessly or intentionally in striking Plaintiff with the door.  (Pl. Dep. at 65.)  Yet, in response to whether she had any evidence that Zani intended to strike her with the door or knew that the door would strike her, Plaintiff,

13

elsewhere, testified: "I have no idea.  Well, yes, I do.  Yeah, I believe so, because when he came in, he told me he thought it was a man standing behind the door."  (Pl. Dep. at 64.)

Citing to testimony that is not in the record, Zani argues that Plaintiff testified that, although she did not know whether Zani's breaking into her room was an "honest mistake," she thought it was a "stupid mistake."  (Pl. Dep. at 88-89.)  According to Zani, this testimony undercuts her claims that Zani was grossly negligent in breaking into Plaintiff's room.  (Br. at 4.)  However, Plaintiff's testimony, when viewed in her favor, simply reflects that reality that Plaintiff could never know Zani's subjective intentions in unlawfully breaking into her room–i.e. whether Zani broke into Plaintiff's room despite actually knowing that doing so was unlawful.  In any event, as noted above, genuine issues of material fact exist as to whether Zani, absent the requisite legal basis, kicked open the door of Plaintiff's residence into her face, entered that residence, and drew his gun on her.  Had Zani, in fact, engaged in such conduct, a reasonable jury could conclude that he would have been acting so "reckless[ly] as to demonstrate a substantial lack of concern" for whether he violated Plaintiff's constitutional rights, especially given his training on the Fourth Amendment's requirements.[5]  (Resp. at 4.)  *See Adams v. Metiva,* 31 F.3d 375, 388 (6th Cir. 1994) (holding that whether a governmental officer engaged in certain conduct and whether that conduct was grossly negligent for purposes of governmental immunity are jury questions).  Zani is not entitled to governmental immunity on Plaintiff's state-law tort claims at this stage of the proceedings.

## 2.  Merits

---

[5] To the extent that Zani contends, for purposes of Plaintiff's gross-negligence claim, that Plaintiff's "stupid mistake" testimony demonstrates that Zani did not commit gross negligence, such a contention likewise fails.  (Br. at 1.)

While the Michigan Supreme court has yet to recognize formally the intentional infliction of emotional distress as a tort, it has described the elements that would be necessary to establish such a claim. *Roberts v. Auto Owners Ins. Co.,* 422 Mich. 594, 697, 603 (Mich. 1985). Specifically, a plaintiff would have to demonstrate: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress. *Id.* at 602. As to the requisite intent or recklessness, a plaintiff may either show that the defendant "specifically intended to cause . . . [him] emotional distress" or that the "defendant's conduct was so reckless that 'any reasonable person would know [that] emotional distress would result.'" *Lewis v. LeGrow,* 258 Mich. App. 175, 197 (2003).

Zani maintains that Plaintiff's IIED claim against him fails as a matter of law. (Br. at 1.) In support, Zani solely relies upon Plaintiff's testimony that, although she did not know whether Zani's breaking into her room was an "honest mistake," she thought that it was a "stupid mistake." (Pl. Dep. at 88-89.) According to Zani, this testimony undercuts her claims that Zani acted intentionally in breaking into Plaintiff's room. (Br. at 4.) However, had Zani, without the requisite legal basis, kicked open the door of Plaintiff's residence into her face, entered that residence, and drew his gun on her, a reasonable jury could conclude that Zani would have been acting so recklessly that any reasonable person would have known that emotional distress would ensue.[6] (Resp. at 4.) In other words, a genuine issue of material fact exists as to whether Zani acted with the requisite culpability for purposes of Plaintiff's IIED claim against him.

### IV. SUMMARY

---

[6] Moreover, to the extent that Defendant Zani contends that such conduct would not rise to the requisite level of extreme and outrageous, a reasonably jury could easily conclude otherwise.

15

For the preceding reasons, the Court DENIES Defendant Zani's motion for summary judgment on all of Plaintiff's claims against him.


SO ORDERED.



                                        s/Paul D. Borman  
                                        PAUL D. BORMAN  
                                        UNITED STATES DISTRICT JUDGE

Dated:  August 19, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 19, 2005.


                                        s/Jonie Parker  
                                        Case Manager